Hough and Others *v.* Osborne and Others.

HOUGH
v.
OSBORNE.

Where several notes, falling due at different times, are secured by a mortgage, the first due has the priority, and the others come in, in the order in which they mature.

The assignment of one of several notes secured by mortgage, carries with it the security afforded by the mortgage.

The holder of a mortgage given to secure the payment of several notes, can not, by an assignment of the mortgage, divest the lien of a third person to whom one of them has been assigned.

*Saturday,*
*December 1.*

ERROR to the *Parke* Circuit Court.

STUART, J.—Bill in chancery to foreclose a mortgage. The bill alleges that in *April,* 1849, *William Osborne* and wife executed a deed of mortgage to *Jared Lake,* for a tract of land (describing it) containing thirty-seven acres and eight hundredths, except two lots, numbered one and two, ·in *Osborne's* addition to the town of *Lodi,* which were expressly reserved out of the mortgage; that the mortgage was given to secure the payment of three promissory notes, made by *Osborne,* of even date with the mortgage, payable to *Lake,* one for 675 dollars, due three months from date, another for 675 dollars, due six months from date, and one for 1,350 dollars, due twelve months from date, and all of them waiving the benefit of valuation laws.

It is further stated, that *Jared Lake* assigned the note for 1,350 dollars to *William A. Lake,* without recourse; and also the note for 675 dollars, which had six months to run; and that *William A. Lake* assigned the note for 1,350 dollars to *Hough* and *Turner,* for the benefit of the other complainants, in the following proportions, viz.: to *Clark* and *Groesbeck* 610 dollars and 85 cents, with interest from *July* 1, 1849; to *Bates* and *Whitcher,* 233 dollars and 88 cents, with interest for the same period; to *Comstock & Co.,* 227 dollars and 46 cents, with like interest; to *Bruce, Stewart & Co.,* 276 dollars and 40 cents, with interest as above; and that *William A. Lake* assigned the note for 675 dollars, due in six months, to *Hough* and *Turner.* All these assignments were without recourse.

On the 14th of *May*, 1849, by an instrument under his seal, *Jared Lake* assigned the mortgage aforesaid to *Eliza Sisson*, which was duly acknowledged and recorded on the 16th of *July*, 1849, in *Parke* county. In *June*, 1849, Miss *Sisson* assigned her interest in the mortgage to *Clark* and *Groesbeck*, for value received, and delivered to them the mortgage and assignment, to secure their claims.

By the original mortgage, it was stipulated between *Osborne* and *Lake*, that *Osborne* might sell lots in the town of *Lodi*, pay the money to *Lake*, to be applied upon the two notes first due; and that *Lake* should release the lot so sold to the purchaser. It was further agreed, that after the two notes of 675 dollars each were paid, *Osborne* might sell lots in *Lodi* on such terms as he pleased, pay over half the proceeds to *Lake*, to be applied on the third note, and *Lake* to release the lots sold from the mortgage as before. The addition to *Lodi* was laid out on the premises embraced in the mortgage.

It is further stated that the plat of this addition was not at the date of the mortgage recorded; that lots one and two, excepted out of the mortgage, were vacant lots of little value; that *Osborne* re-platted the town, and changed the numbers of the lots, so as to make one and two cover two improved lots, having a dwelling and store on them, and worth 2,000 dollars, and fraudulently recorded the new plat, for the purpose of hindering *Lake* and others from realizing their claims; that after the date of the mortgage and recording of the new plat, *Osborne* sold lots *one* and *two* on that plat to his brother for 1,300 dollars, with a full knowledge of all the facts; that the sale was a fraudulent combination, without consideration, and that the price was never accounted for by *William Osborne* to *Lake* agreeably to the mortgage.

It is further stated, that *Lake* assigned the note for 675 dollars, due in three months, to *Erasmus W. Weaver*, one of the defendants; that upon this note, in *October*, 1849, *Weaver* obtained a judgment at law in the *Parke* Circuit Court against *Osborne*; that in *May*, 1850, execution was issued and levied upon lots one and two in the

fraudulent plat, and in *September* following sold to *Weaver* for 200 dollars; that *Weaver* then levied his execution on the mortgaged premises, which, it is alleged, were by the assignment of the mortgage to Miss *Sisson*, expressly intended to secure the notes running six and twelve months.

The complainants allege and claim that, by the above acts, *Weaver* is estopped from claiming any interest in the mortgage or in its proceeds when foreclosed.

*Weaver* answers, and only so far as he denies the material parts of the bill, or claims some right, need his answer be noticed. He denies the transfer of the two notes last due; he claims the priority of right to the mortgage because his is the first note due; insists he is not estopped, &c.; avers that his execution was levied on lots one and two, according to the first plat, &c.; and denies the allegation on that point in the bill. The other material facts of the bill are admitted, denying only certain conclusions, &c. The other defendants confess the facts alleged.

The cause was set down for final hearing on the bill, answer of *Weaver*, exhibits and evidence. Decree of foreclosure, ordering the residue of *Weaver's* note to be first paid out of the proceeds, and the other two notes in the order in which they fell due.

It was further decreed that *Osborne's* new plat of *Lodi*, was fraudulent and void.

The complainants prosecute error.

We are of opinion that the decree should be sustained. It is in strict accordance with the rule laid down in the *Bank* v. *Tweedy*, 8 Blackf. 447, and followed in *Stanly* v. *Beatty*, 4 Ind. R. 134. *Weaver* held the note first due, and was entitled to be first satisfied. The rule is, that notes due at different times are like so many successive mortgages. The first due has the priority, and the others come in, in the order in which they mature. Unless *Weaver* has in some way waived that priority, or is estopped from asserting it, his right is clear.

But it is contended that by the action at law, and the proceedings under it, *Weaver* waived the mortgage, and is estopped thereby from claiming anything under it. It is

true that if the mortgagee of land purchases the equity of

redemption on execution, he extinguishes the mortgage debt due to himself, to the extent of the value of the land, after deducting the sum paid for the equity of redemption. *Murphy* v. *Elliott*, 6 Blackf. 482. But *Weaver* denies the allegations in the bill in this particular; and there is no evidence to that point. Lots numbers one and two, as designated on the old plat, were properly subject to his execution. To sustain the allegation denied, the complainants should have proved that the lots sold to *Weaver* on his execution, were lots numbers one and two as designated on *Osborne's* fraudulent plat, on which these lots were part of the land embraced in the mortgage.

Upon the pleadings and evidence, *Weaver* was entitled to a priority out of the proceeds of the mortgage for the residue of the claim.

The assignment of the mortgage itself to Miss *Sisson*, and by her to *Clark* and *Groesbeck*, for the express purpose of securing the notes last due, could not divest the lien of the note held by *Weaver*. The face of the mortgage was notice to every holder what it was executed to secure. They must be taken to know the law as to the priority of lien; and that the transfer of the notes carried with it the security afforded by the mortgage. The only thing easily perceivable as to the transfer of the mortgage security without the notes, was its futility.

There is no controversy about the fraudulent plat of *Lodi*. On the confession of the *Osbornes*, the Court correctly decreed it void.

*Per Curiam.*—The decree is affirmed with costs.

*J. P. Usher*, *E. W. McGaughey* and *A. L. Roache*, for the appellants.

*S. F. Maxwell*, *D. Mace*, *W. C. Wilson* and *T. H. Nelson*, for the appellees.