EGBERT *v.* EGBERT, ET AL.

[No. 28,465.   Filed June 25, 1948.]

*Howard Grimm,* of Auburn, *Otto E. Grant,* of Fort Wayne, and *Claud V. Barker,* of Albion, for appellant.

*Dan M. Link,* of Auburn, *Mountz & Mountz,* of Garrett, and *Hussellman & Hussellman,* of Berne, for appellees.

GILKISON, J.—The undisputed evidence in this case shows that on February 28, 1926, appellee, William C. Egbert and Alice F. Egbert, husband and wife, for value received executed their first mortgage bond to DeKalb Mortgage Loan Co., trustee or bearer, for fifty-two hundred fifty dollars, providing for interest and attorney's fees, and due February 28, 1931. This bond was secured by a mortgage, on certain real estate described in the complaint, duly executed by William C. and Alice F. Egbert, in which the mortgagors expressly agreed to pay the sums of money so secured, without relief. It was duly recorded March 10, 1926, and has never been released of record. The mortgage bond was later assigned in writing in blank without recourse and delivered to John F. Cameron, who was an uncle of the mortgagor, William C. Egbert.

On May 2, 1934, William C. Egbert and Alice F. Egbert, his wife, executed a warranty deed for the mortgaged real estate to Don F. Cameron and Angus L. Cameron, sons of John F. Cameron, containing the following stipulation: "The grantees accept this conveyance subject to a certain mortgage lien thereon in the name of John F. Cameron and subject to ditch and tax

liens." There is some evidence that this deed was delivered to Don F. Cameron, (on this appeal we shall consider this evidence uncontradicted) and that it was then placed in the safe of John F. Cameron unrecorded, where it remained until after John F. Cameron's death in 1944. It was recorded December 8, 1944. William C. and Alice F. Egbert lived on the real estate and farmed it after they executed the deed, paying rent to John F. Cameron until his death in September, 1944.

During the year 1937, John F. Cameron went to the Egbert home on the farm and in the presence of appellant's father said he wanted to give appellant some papers and handed him an envelope that he said contained a mortgage and mortgage note and said he wanted appellant to have them. Mr. Cameron said, "Here is a note and mortgage in here I want you to have." At that time appellant looked at the note and mortgage and knew what they were. He was then seventeen years old. He put the note and mortgage away with his school papers and has kept them in his possession ever since.

In the summer of 1945 appellant learned that the Camerons were talking about selling the farm, and with his wife and father, William C. Egbert, called upon Don F. Cameron with respect to buying the farm. Don F. Cameron told them that through Edgar Willenar, he and his brother were about to sell the farm to appellees, McEntarfer, and he referred them to Mr. Willenar, who told appellant that they had verbally agreed to sell the farm to the McEntarfers and he thought they should keep their word. Appellant then went back to Don F. Cameron, who told appellant he thought the farm would be a poor investment for appellant.

Thereafter on June 21, 1945, appellant wrote appellee, Don F. Cameron, advising him that some eight

years previous John F. Cameron had given him the note and mortgage on the farm, and that he still had them. That the mortgage had never been released. That he felt the donor intended that he, the donee, should realize material gain from the papers, and that he would appreciate hearing from Mr. Cameron on the subject.

On October 18, 1945, appellees, Cameron, conveyed the farm to appellees, McEntarfer, and on April 2, 1946 appellant filed this action to foreclose the mortgage. The appellees, DeKalb Mortgage Loan Company, Trustee, and DeKalb Mortgage Loan Co., trustee or bearer, answered by disclaimer. Appellee, William C. Egbert answered by denial. Appellees, McEntarfer and McEntarfer, and Cameron and Cameron filed an answer under the rules, a second paragraph averring that William C. Egbert and his wife by warranty deed on May 2, 1937 transferred the real estate involved to Don F. and Angus F. Cameron, subject to the mortgage sued upon. That coincident with the execution of said deed, John F. Cameron transferred the debt to Don F. and Angus L. Cameron, and that therefore the mortgage debt was merged in the title; a third paragraph pleading payment; a fifth paragraph pleading both merger and payment; a sixth paragraph denying that title to the note and mortgage sued upon was ever transferred to the plaintiff by John F. Cameron. A demurrer was sustained to the 4th paragraph of answer. The affirmative answers were put at issue by denial. The burden was therefore on the plaintiff to prove the material averments of his complaint by a fair preponderance of the evidence, and on the defendants to prove the material averments of their affirmative answers by a like preponderance.

After hearing the evidence the trial court found for

defendants and rendered judgment accordingly, from which this appeal is taken. A motion for new trial containing seven specifications, including that the finding is not sustained by sufficient evidence, and is contrary to law, was overruled by the court. The assignment of error questions only the ruling on the motion for new trial.

When the deed was made by William C. Egbert and wife to Don F. and Angus L. Cameron, it was made "subject to a certain mortgage lien thereon in the name of John F. Cameron." This is the mortgage sued upon by appellant. We think there is no question that recitals in a deed affecting the title or character of the estate must be taken notice of by persons claiming under such deed. *Coleman* v. *Watson* (1876), 54 Ind. 65, 72. *State ex rel. Lowry* v. *Davis* (1884), 96 Ind. 539, 544. 26 C.J.S. - *Deeds* - *Recitals* § 89 p. 335. 60 C.J. - *Subject To* § 8 p. 673. Therefore, the defendants, Cameron and Cameron, must have accepted the deed to the real estate in question, *cum onere* or subject to the mortgage lien sued upon. The recital in the deed noted, effectively excludes any assertion of a merger of the mortgage in the title so conveyed, coincident with the execution of the deed. *Chase* v. *VanMeter* (1894), 140 Ind. 321, 331, 333, 39 N. E. 455; *Thompson* v. *Reising* (1943), 114 Ind. App. 456, 464, 51 N. E. 2d 488. There is no evidence whatever and no possible inference that can be drawn from the evidence in the record even remotely suggesting that John F. Cameron transferred the debt sued upon to Don F. and Angus Cameron coincident with the execution of the deed from the Egberts to the Camerons. The true test of merger is the expressed or implied intention of the party. If from all the circumstances of the transaction it appears that no merger was intended, none

will be presumed. *Chase* v. *VanMeter, supra; Wayne Etc. Loan Co.* v. *Beckner* (1921), 191 Ind. 664, 666, 134 N. E. 273; *Murray* v. *Murray* (1916), 62 Ind. App. 132, 144, 112 N. E. 835; See Anno. 95 A.L.R. 629.

The assignment of a note secured by mortgage operates *pro tanto* as an assignment of the mortgage. *Baugher* v. *Woolen* (1896), 147 Ind. 308, 311, 45 N. E. 94; *Parkhurst* v. *Watertown Steam Engine Company* (1886), 107 Ind. 594, 596, 8 N. E. 635 and cases cited; *State Life Insurance Co.* v. *Cast* (1938), 214 Ind. 17, 20, 13 N. E. 2d 705.

It will be noted that the bond or note in question is made payable to a specific payee *or bearer*. The law merchant, by which negotiable instruments are governed, gives them in many respects the character and currency of money, and title may be transferred by delivery where the paper is payable to bearer. 10 C.J.S. *Bills and Notes* § 188 p. 683; Sec. 226 p. 718; 8 Am. Jur. *Bills and Notes* § 303 p. 41. Burns' 1933 §§ 19-311, 19-305. Uniform Negotiable Instruments Act, Acts 1913 Ch. 63 Sec. 9 p. 122, Sec. 40 p. 127. The word "bearer" is defined by the Uniform Negotiable Instruments Act thus: " 'Bearer' means the person in possession of a bill or note which is payable to bearer." § 19-1802, Burns' 1933. It further provides: ". . . . An endorsement in blank specifies no indorsee, and an instrument so indorsed is payable to bearer, and may be negotiated by delivery." § 19-305 Burns' 1933, § 9; Uniform Negotiable Instruments Law, Acts 1913 page 122, § 19-109 Burns' 1933. *Brown* v. *Fisher* (1905), 35 Ind. App. 549, 553, 74 N. E. 632. *Rich* v. *Starbuck* (1875), 51 Ind. 87, 90, 91. It thus conclusively appears from the evidence, that the note or bond in question by its form, and by reason of being indorsed in blank by the payee, DeKalb Mortgage

Loan Co., trustee or bearer, was unquestionably bearer, paper and therefore was subject to transfer by delivery. The delivery of the note and mortgage to the appellant by John F. Cameron in 1937, as a gift was sufficient therefore to transfer the title therein to the donee.

It thus appears that appellant's case was completely proved by uncontradicted evidence.

Appellees make no contention that the evidence even tends to sustain either paragraph of their affirmative answer. On the contrary their only contention is that since there was a general finding in favor of the defendants, no question can be raised as to the sufficiency of the evidence to sustain the finding. However, it is well established that when a plaintiff has fully sustained each of the material averments of his complaint by uncontradicted evidence, a general finding against him is contrary to law, and will compel a reversal. *Wright v. Peabody Coal Co.* (1948), 225 Ind. 679, 77 N. E. 2d 116, 119; *City of Decatur v. Eady* (1917), 186 Ind. 205, 219, 115 N. E. 577; *Riley v. Boyer* (1881), 76 Ind. 152; *Jamieson v. Miller* (1876), 54 Ind. 332; *Butterfield v. Trittipo* (1879), 67 Ind. 338, 342.

We quite agree with appellees that, in this case, the duty of weighing the evidence was wholly for the trial court. However, the trial court may not refuse to consider and weigh competent, uncontradicted evidence. Such a refusal by the trial court is not weighing the evidence, but ignoring it. *Roe v. Cronkhite Adm'rs.* (1876), 55 Ind. 183; *Davis v. Grater* (1878), 62 Ind. 408.

For the reasons given, the judgment of the trial court is reversed, with directions to sustain the motion for new trial, and further proceedings agreeable with this opinion.

NOTE.—Reported in 80 N. E. 2d 104.